IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RODNEY P. FENIMORE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:23-cv-1076-K-BN |
| | § | |
| WENDY HILL and CITY OF | § | |
| MESQUITE, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Rodney P. Fenimore filed a *pro se* complaint against the City of
Mesquite and one of its code enforcement officers, Wendy Hill, alleging that they
violated the Fourth Amendment to the Unites States Constitution. *See* Dkt. No. 3.

Fenimore's lawsuit is referred to the undersigned United States magistrate
judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of
reference from United States District Judge Ed Kinkeade. *See also* Dkt. No. 6.

The City effectively moved to dismiss the complaint under Federal Rules of
Civil Procedure 12(b)(5) and 12(b)(6). *See* Dkt. Nos. 7 & 8. Fenimore responded. *See*
Dkt. No. 14. The City replied. *See* Dkt. No. 16. And the Court struck and unfiled
Fenimore's unauthorized sur-replies. *See* Dkt. Nos. 17-20.

The undersigned now enters these findings of fact, conclusions of law, and
recommendation that, for the reasons and to the extent set out below, the Court
should grant the City's motion to dismiss the complaint for failure to state a claim on
which relief may be granted; deny as moot the motion challenging the method of

service attempted; and, on its own motion, dismiss the complaint as to Hill, also for failure to state a claim on which relief may be granted.

## Applicable Background

Fenimore alleges that, when taking out the garbage, his son encountered Hill in the alley. *See* Dkt. No. 3 at 2. She asked if a parent was home, and Fenimore came out to the alley, where Hill introduced herself and "informed [Fenimore] everything [he] had in the back had to go," including his Jeep. *Id.*

A discussion ensued between Fenimore and Hill, which, according to Fenimore, ended because he "could see [he] was getting nowhere with" Hill. *Id.*

Hill then

> said she needed to put a sticker on the jeep and that is when I informed her she could not come on my property. [T]hat is when she informed me I do not know what I have started and stated she was going to get a warrant to take my personal property and put a lien on the property for cleanup. [T]hen Wendy Hill called the police out to assist when the officers showed up they asked me what the problem was and I said I have no problems. Then they talked to Wendy Hill code compliance and I informed the officers that I do not want her on my property. I allowed the officers to put the sticker on the jeep so she could take her picture and they could go on with their day. Wendy Hill took the picture and everybody left.

*Id.*

Ten days later, Hill returned and "comes on to [the] property taking pictures of everything on [the] property after she was informed not to enter the property." *Id.*

Based on these allegations, Fenimore seeks monetary damages based on a violation of the Fourth Amendment. *See id.* at 3.

## Legal Standards

In deciding a motion to dismiss for failure to state a claim on which relief may

be granted under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

Such a motion is therefore "not meant to resolve disputed facts or test the merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557); *see also Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) ("A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" (quoting *Iqbal*, 556

U.S. at 679)); *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, FED. R. CIV. P. 8(a)(2)))).

As these cases reflect, Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, but it does require that a plaintiff allege more than labels and conclusions. And, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

In sum, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities*,

920 F.3d at 899 ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citation omitted)).

"*Pro se* complaints receive a 'liberal construction.' Even so, 'mere conclusory allegations on a critical issue are insufficient.'" *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018), then *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (per curiam)). And "liberal construction does not require that the Court ... create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013).

"To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff'" and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Aside from "matters of which judicial notice may be taken under Federal Rule of Evidence 201," *Inclusive Communities Project*, 920 F.2d at 900 (citations omitted), a court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion, *see Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *see also Basic Capital Mgmt., Inc. v. Dynex Capital, Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (Federal Rule of Evidence 201(d) "expressly provides that a court 'may take judicial notice at *any* stage of the

proceeding,' and our precedents confirm judicially noticed facts may be considered in ruling on a 12(b)(6) motion." (citations omitted)).

Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *see also Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 511 (11th Cir. 2019) ("The Civil Rules provide that an attachment to a complaint generally becomes 'part of the pleading for all purposes,' including for ruling on a motion to dismiss." (quoting FED. R. CIV. P. 10(c); citations omitted)). And, "[w]hen 'an allegation is contradicted by the contents of an exhibit attached to the pleading, then indeed the exhibit and not the allegation controls.'" *Rogers v. City of Yoakrum*, 660 F. App'x 279, 285 n.6 (5th Cir. 2016) (per curiam) (quoting *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004) (citing, in turn, *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940))).

Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). And, while the United States Court of Appeals for the Fifth Circuit "has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the terms of a contract, the documents constituting the contract are central

to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). But, "if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And a plaintiff may not amend his allegations through a response to a motion to dismiss. "[A] claim for relief" must be made through a pleading, FED. R. CIV. P. 8(a), and a response to a motion is not among the "pleadings [that] are allowed" under the Federal Rules of Civil Procedure, FED. R. CIV. P. 7(a); *see, e.g.*, *Klaizner v. Countrywide Fin.*, No. 2:14-CV-1543 JCM (PAL), 2015 WL 627927, at *10 (D. Nev. Feb. 12, 2015) ("All claims for relief must be contained in a pleading. A response to a motion is not a pleading and it is improper for the court to consider causes of action not contained in the pleadings." (citations omitted)).

A district court may "consider the sufficiency of the complaint on its own initiative." *Guthrie v. Tifco Indus.*, 941 F.2d 374, 379 (5th Cir. 1991) (citation omitted); *see also Bell v. Valdez*, 207 F.3d 657 (table), 2000 WL 122411, at *1 n.1 (5th Cir. Jan. 4, 2000) (per curiam) ("[I]t is well-established that the district court may dismiss a complaint on [Federal Rule of Civil Procedure] 12(b)(6) grounds *sua sponte*." (citations omitted)).

"The broad rule is that 'a district court may dismiss a claim on its own motion as long as the procedure employed is fair.' More specifically, 'fairness in this context requires both notice of the court's intention and an opportunity to respond' before dismissing *sua sponte* with prejudice." *Carver v. Atwood*, 18 F.4th 494, 498 (5th Cir.

2021) (citations omitted).

These findings, conclusions, and recommendations provide notice, and the period for filing objections to them affords an opportunity to respond. *See, e.g.*, *Starrett v. U.S. Dep't of Defense*, No. 3:18-cv-2851-M-BH, 2018 WL 6069969, at *2 (N.D. Tex. Oct. 30, 2018) (citations omitted), *rec. accepted*, 2018 WL 6068991 (N.D. Tex. Nov. 20, 2018), *aff'd*, 763 F. App'x 383 (5th Cir.) (per curiam), *cert. denied*, 140 S. Ct. 142 (2019).

## Analysis

Fenimore appears to allege that both the City and Hill violated his constitutional rights.

## I.    Fenimore fails to allege a plausible constitutional violation against the City.

Starting with the City, "[a] person may sue a municipality that violates his or her constitutional rights [only] 'under color of any statute, ordinance, regulation, custom, or usage.'" *Hutcheson v. Dall. Cnty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021) (quoting Section 1983; citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

So a plaintiff alleging a *Monell* claim "has two burdens: to [plausibly allege] (1) that a constitutional violation occurred and (2) that a municipal policy was the moving force behind the violation," *Sanchez v. Young Cnty., Tex.*, 956 F.3d 785, 791 (5th Cir. 2020) (citing *Monell*, 436 U.S. at 694).

Accordingly, "[i]n municipal-liability cases," the threshold question "is whether the complained-of 'act may fairly be said to represent official policy.'" *Id.* at 792-93 (cleaned up; quoting *Monell*, 436 U.S. at 694); *see also Hutcheson*, 994 F.3d at 483

(rejecting the argument that a district court errs by dismissing a *Monell* claim

without first analyzing the underlying constitutional violation).

> And a plaintiff may proceed on a *Monell* claim only by
>
> identify[ing] "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (cleaned up). Municipalities are not liable "on the theory of respondeat superior" and are "almost never liable for an isolated unconstitutional act on the part of an employee." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

*Hutcheson*, 994 F.3d at 482; *see also Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 497

& n.11 (5th Cir. 2021) (noting that where a plaintiff's claim fails as to one prong, a

court "need not consider whether [his] claim also fails the other two *Monell* prongs"

(citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168-69 (5th Cir. 2010))).

"Official policy can arise in various forms. It usually exists in the form of

written policy statements, ordinances, or regulations, but may also arise in the form

of a widespread practice that is 'so common and well-settled as to constitute a custom

that fairly represents municipal policy.'" *James v. Harris Cnty.*, 577 F.3d 612, 617

(5th Cir. 2009) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001)

(quoting, in turn, *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (per

curiam) (en banc))); *see also Brown*, 985 F.3d at 497 ("An 'official policy' may take two

forms – either a 'policy statement formally announced by an official policymaker' or

a 'persistent widespread practice of city officials or employees, which, although not

authorized by officially adopted and promulgated policy, is so common and well

settled as to constitute a custom that fairly represents municipal policy.'" (quoting

*Zarnow*, 614 F.3d at 168-69)).

"Under the second requirement, a plaintiff must show '[a]ctual or constructive knowledge of [a] custom' that is 'attributable to the governing body of the municipality or to an official to whom that body ha[s] delegated policy-making authority.'" *Allen v. Hays*, 65 F.4th 736, 749 (5th Cir. 2023) (quoting *Webster*, 735 F.2d at 841). And "a plaintiff must allege 'moving force' causation by showing first, 'that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'" *Id.* (quoting *Valle v. City of Hous.*, 613 F.3d 536, 542 (5th Cir. 2010)).

"[T]he failure to provide proper training may fairly be said to represent a policy for which the [municipality] is responsible, and for which [it] may be held liable if it actually causes injury." *Shumpert v. City of Tupelo*, 905 F.3d 310, 317 (5th Cir. 2019) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). And, although an alleged failure to train (or to supervise) "is a separate theory of municipal liability," "the same standard applies both to a failure to train [or to supervise] claim and to a municipal liability claim." *Pinedo v. City of Dall., Tex.*, No. 3:14-cv-958-D, 2015 WL 5021393, at *9 (N.D. Tex. Aug. 25, 2015) (citations omitted).

"The ratification theory provides another way of holding a city liable under § 1983" but only "if the policymaker approves a subordinate's decision and the basis for it, as this 'ratification' renders the subordinate's decision a final decision by the policymaker." *Allen*, 65 F.4th at 749 (footnote omitted). But "a policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability

on behalf of the municipality." *Peterson*, 588 F.3d at 849 (citation omitted).

This theory is also "limited to 'extreme factual situations,'" such that conduct may be unconstitutional but "not sufficiently extreme to qualify for a finding of ratification." *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395-96 (5th Cir. 2017) (citations omitted)).

Most importantly, regardless the theory of municipal liability, "[t]o proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997); footnote omitted).

As to the City, Fenimore fails to provide facts that identify a policymaker or an official policy – at all.

And, almost without exception, allegations "limited to the events surrounding the plaintiff" himself cannot constitute "an allegation of a *de facto* policy." *Culbertson v. Lykos*, 790 F.3d 608, 629 (5th Cir. 2015); *see, e.g.*, *id.* at 628 ("Here, the plaintiffs allege there was a retaliatory campaign against them and a retaliatory investigation against the grand jury and its prosecutors, all arising from the same predicate events. The retaliatory campaign against them was publicly known, but they offered no evidence that similar retaliation had victimized others. There was, in other words, no allegation of a 'widespread practice' of retaliation that is 'so common and well settled' as to constitute the policy of Harris County." (quoting *Webster*, 735 F.2d at 853)).

So Fenimore has not plausibly alleged that the City violated his constitutional rights.

## II.    Fenimore fails to allege a plausible constitutional violation against Hill regardless of the capacity in which she is sued.

Turning to Hill, it is not clear if Fenimore has sued her in an individual or an official capacity or both.

In this circuit, "[a] person's capacity need not be pled except to the extent required to show the jurisdiction of the court." *Robinson v. Hunt Cnty., Tex.*, 921 F.3d 440, 446 (5th Cir. 2019) (quoting *Parker v. Graves*, 479 F.2d 335, 336 (5th Cir. 1973) (per curiam) (citing, in turn, FED. R. CIV. P. 9(a))).

And "[t]he Fifth Circuit follows the majority view among the circuits that, when a plaintiff fails to allege in what capacity he is suing the defendants, a court must look to the substance of the plaintiff's claim, the relief sought, and the course of proceedings to discern the nature of the § 1983 suit." *Hardesty v. Waterworks Dist. No. 4 of Ward Four*, 954 F. Supp. 2d 461, 470-71 (W.D. La. 2013) (citing *Parker*, 479 F.2d at 336; collecting cases).

"The performance of official duties creates two potential liabilities, individual-capacity liability for the person and official-capacity liability for the municipality." *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.,* 229 F.3d 478, 485 (5th Cir. 2000).

Where "'a defendant government official is sued in his individual and official capacity, and the city or state is also sued,' the 'official-capacity claims and the claims against the governmental entity essentially merge.'" *Harmon v. Dall. Cnty., Tex.*, 927

F.3d 884, 891 (5th Cir. 2019) (quoting *Turner*, 229 F.3d at 485).

And the standards applicable to pleading municipal liability apply to an official-capacity claim. *See, e.g.*, *Byrum v. City of Mesquite*, 126 F. App'x 670, 671 (5th Cir. 2005) (per curiam) ("A governmental entity or municipality, as well as officers thereof acting in their official capacity, can be held liable under § 1983 only if official policy or custom caused the deprivation of a constitutional right." (citations omitted)).

So any official-capacity claim against Hill must be dismissed for the reasons set out above.

"Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). Which means that, "to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

Here, to the extent that Fenimore brings a claim against Hill in her personal capacity, the alleged Fourth Amendment violation appears based on her returning to the property and "taking pictures of everything on [Fenimore's] property after [Hill] was informed not to enter the property."

"The Fourth Amendment guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *United States v. Knox*, No. 3:12-cr-252-B, 2012 WL 5389677, at *2 (N.D. Tex. Nov. 5, 2012) (quoting U.S. CONST. amend. IV). And its scope "extends to protect

the 'curtilage' of a home from unconstitutional searches." *Id.* (quoting *United States v. Thomas*, 120 F.3d 564, 571 (5th Cir. 1997) (quoting, in turn, *United States v. Dunn*, 480 U.S. 294, 300 (1987))).

So "[a] finding that an area is within the curtilage entitles that area to the same Fourth Amendment protections that are enjoyed by the home." *Id.* (citing *Dunn*, 480 U.S. at 301).

But Fenimore has not alleged that, by "taking pictures of everything on [his] property," Hill searched his home or its curtilage.

That is because Fenimore alleges that he first met Hill in the alley, from where Hill was able to spot personal property in Fenimore's yard that was not in compliance with municipal code, which raises the reasonable inference that any fence between Fenimore's yard and the alley did not obstruct Hill's view.

And, although Fenimore alleges that, when she returned, Hill came "on to [his] property," he does not allege where Hill did so – which is critical to determining whether the Fourth Amendment's protections are triggered. *See Collins v. Virginia*, 584 U.S. 586, 592 (2018) ("'When it comes to the Fourth Amendment, the home is first among equals.' 'At the Amendment's very core stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' To give full practical effect to that right, the Court considers curtilage – 'the area immediately surrounding and associated with the home' – to be 'part of the home itself for Fourth Amendment purposes.'" (cleaned up; quoting *Florida v. Jardines*, 569 U.S. 1, 6 (2013))).

As the Fifth Circuit explained in a similar situation, after finding that a defendant's driveway was not part of the curtilage of his home,

> [b]ecause Beene's driveway was not part of the curtilage of his home or of any other constitutionally protected area, the police were permitted to bring a dog onto his property to sniff his vehicle. "In a long line of cases, the [United States] Supreme Court has held that, except for a house's curtilage, the Fourth Amendment does not protect people from official searches characterized as sights seen in the open fields." *Husband v. Bryan*, 946 F.2d 27, 29 (5th Cir. 1991) (quotation marks omitted) (collecting cases). The Court has clarified that "the term 'open fields' may include any unoccupied or undeveloped area outside of the curtilage": "An open field need be neither 'open' nor a 'field' as those terms are used in common speech." *Oliver v. United States*, 466 U.S. 170, 180 n.11 (1984). Courts have applied the open-fields doctrine to myriad search locations beyond a literal field. *See* 1 WAYNE R. LaFAVE, SEARCH & SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 2.4(a) (5th ed. 2014) (collecting cases). Under this expansive definition, Beene's driveway qualifies as an open field.
>
> An open field is not a protected area because it does not "provide the setting for those intimate activities" protected by the Fourth Amendment, and "as a practical matter these lands usually are accessible to the public and the police in ways that a home, an office, or commercial structure would not be." *Oliver*, 466 U.S. at 179, 104. Moreover, the Supreme Court expressly rejected a case-by-case review of open-fields cases as an unworkable accommodation, noting that such an "ad hoc approach not only makes it difficult for the policeman to discern the scope of his authority, it also creates a danger that constitutional rights will be arbitrarily and inequitably enforced." *Id.* at 181-82 (citation omitted).
>
> An investigation of an open field, be it visual, olfactory, or otherwise, does not implicate the Fourth Amendment because "an individual has no legitimate expectation that open fields will remain free from warrantless intrusion by government officers." *Id.* at 181. The open-fields doctrine does not permit law enforcement officers literally to unearth evidence, contained within an open field but hidden beyond plain view. *See, e.g.*, *Husband*, 946 F.2d at 29. Indeed, any "physically invasive inspection" is commonly recognized as uniquely intrusive, even when performed in a public setting. *Bond v. United States*, 529 U.S. 334, 337 (2000). A dog sniff, though, is not a physically invasive inspection.

*United States v. Beene*, 818 F.3d 157, 162-63 (5th Cir. 2016).

Nor are photographs taken from an "open field" a physically invasive

inspection. *See also United States v. Barrera-Martinez*, 274 F. Supp. 2d 950, 959-60 (N.D. Ill. 2003) (In *United States v. Conner*, 478 F.2d 1320 (7th Cir. 1973), "[t]he garage had an apron near an alleyway and from both the alley and apron, the officers could see into the interior of the garage where the officers observed that a car was being taken apart. *Id.* at 1322. The court found that the defendants in the garage had no reasonable expectation of privacy and that 'even if the officers were on the apron, which was not fenced off from the alley, we think that a mere "technical trespass" did not transform an otherwise reasonable investigation into an unreasonable search.' *Id.* at 1323. [Here,] Officer Howard's actions in approaching Montes and asking him to come out of the garage for questioning were reasonable in light of the suspicious circumstances of the vehicle switch and the duffel bag transaction. Because Officer Howard merely did what most visitors would have done to talk with Montes, and because the apron was open and observable to the public, we find it was not within the protected curtilage of Montes' garage. Thus, if Officer Howard did in fact step onto the apron, he did not violate Montes' Fourth Amendment rights.").

But, if Fenimore does allege that Hill somehow intruded on the curtilage of his home, *cf. Jardines*, 569 U.S. at 7 ("While law enforcement officers need not 'shield their eyes' when passing by the home 'on public thoroughfares,' an officer's leave to gather information is sharply circumscribed when he steps off those thoroughfares and enters the Fourth Amendment's protected areas." (citation omitted)), taking pictures of the property while on the curtilage in the context of these allegations does not necessarily exhibit a plausible violation of the Fourth Amendment:

The general rule under the Fourth Amendment is that searches of private property are unreasonable unless they are conducted pursuant to a warrant issued upon probable cause or fall within one of the limited exceptions to the warrant requirement. *See, e.g.*, *Stoner v. State of Cal.*, 376 U.S. 483, 486 (1964). In most instances, probable cause is based on sworn facts that describe particularly the area to be searched and the suspected evidence to be found. *See, e.g.*, *United States v. Perez*, 484 F.3d 735, 741 (5th Cir. 2007) (citing U.S. CONST. amend. IV). A different standard for probable cause has been developed, however, in the context of area code-enforcement housing inspections. In *Camara v. Municipal Court of the City and County of San Francisco*, 387 U.S. 523 (1967), the Supreme Court discussed the government interest in preventing "even the unintentional development of conditions which are hazardous to public health and safety." *Id.* at 535. It concluded that area code-enforcement inspections were reasonable and the only effective way to achieve this interest. *Id.* at 535-36. Therefore, it held:

> [I]t is obvious that "probable cause" to issue a warrant to inspect must exist if reasonable legislative or administrative standards for conducting area inspection are satisfied with respect to a particular dwelling. Such standards, which will vary with the municipal program being enforced, may be based upon the passage of time, the nature of the building (e.g., a multifamily apartment house), or the condition of the entire area, but they will not necessarily depend upon specific knowledge of the condition of the particular dwelling.

*Id.* at 538.

*Livecchi v. City of Grand Prairie*, No. 3:07-cv-1305-D, 2009 WL 306123, at *6-*7 (N.D. Tex. Feb. 9, 2009).

Based on *Camara* and its progeny – and considering Hill's alleged prior visit to Fenimore's property – Fenimore must allege more to show that, if Hill did later conduct a search that implicates the Fourth Amendment, that search was not based on probable cause.

In sum, Fenimore's current skeletal allegations as to Hill do not nudge an alleged Fourth Amendment claim against her in an individual capacity over the line from possible to plausible. *See Twombly*, 550 U.S. at 557; *Iqbal*, 556 U.S. at 678.

**III.  The opportunity to file objections to these findings, conclusions, and recommendation allows Fenimore the ability to avoid dismissal with prejudice by showing the Court how he would amend his allegations to allege claims on which relief may be granted.**

For the reasons set out above, Fenimore claims should be dismissed, whether on the City's motion or the Court's own motion.

But the opportunity file objections to this recommendation (further explained below) allows Fenimore a chance to cure the deficiencies identified above and thus show the Court that this case should not be dismissed with prejudice at this time and that the Court should instead grant him leave to amend. *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when justice so requires, but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave." (citations omitted)). *Cf. Martinez v. Nueces Cnty., Tex.*, 71 F.4th 385, 391 (5th Cir. 2023) ("If the complaint, as amended, would be subject to dismissal, then amendment is futile and the district court [is] within its discretion to deny leave to amend." (quoting *Ariyan, Inc. v. Sewage & Water Bd. of New Orleans*, 29 F.4th 226, 229 (5th Cir. 2022))).

## Recommendation

The Court should grant Defendant City of Mesquite's motion to dismiss the complaint for failure to state a claim on which relief may be granted [Dkt. No. 8]; deny as moot its motion challenging the method of service attempted [Dkt. No. 7];

and, on its own motion, dismiss the complaint as to Defendant Wendy Hill, also for failure to state a claim on which relief may be granted, unless Plaintiff Rodney P. Fenimore demonstrates a basis to allow leave to amend through timely objections.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 23, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE